UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, CITY OF NEW YORK, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF HAWAI'I, STATE OF ILLINOIS, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF OREGON, COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN, CITY OF CHICAGO, and COOK COUNTY, ILLINOIS,<br><br>                      Plaintiffs,<br>-v-<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ALEX M. AZAR II, *in his official capacity as Secretary of the United States Department of Health and Human Services*, and UNITED STATES OF AMERICA,<br><br>                      Defendants. | 19 Civ. 4676 (PAE) |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., and PLANNED PARENTHOOD OF NORTHERN NEW ENGLAND, INC.,<br><br>                      Plaintiffs,<br>-v-<br><br>ALEX M. AZAR II, *in his official capacity as Secretary, United States Department of Health and Human Services*, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ROGER SEVERINO, *in his capacity as Director, Office for Civil Rights, United States Department of Health and Human Services*, and OFFICE FOR CIVIL RIGHTS, *United States Department of Health and Human Services*,<br><br>                      Defendants. | 19 Civ. 5433 (PAE) |

| | |
|---|---|
| NATIONAL FAMILY PLANNING AND REPRODUCTIVE HEALTH ASSOCIATION, and PUBLIC HEALTH SOLUTIONS, INC.,<br><br>                              Plaintiffs,<br><br>                    -v-<br><br>ALEX M. AZAR, II, *in his official capacity as Secretary of the U.S. Department of Health and Human Services*, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ROGER SEVERINO, *in his official capacity as Director of the Office for Civil Rights of the U.S. Department of Health and Human Services*, and OFFICE FOR CIVIL RIGHTS OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>                              Defendants. | 19 Civ. 5435 (PAE) |

**OPINION & ORDER**

PAUL A. ENGELMAYER, District Judge:

These consolidated actions concern a challenge to a final rule issued by the U.S. Department of Health and Human Services ("HHS") on May 21, 2019. The rule is entitled "Protecting Statutory Conscience Rights in Health Care," 84 Fed. Reg. 23,170 (May 21, 2019) (to be codified at 45 C.F.R. pt. 88) (the "Rule"). Before the Court is a motion by Dr. Regina Frost and the Christian Medical and Dental Association ("CMDA") (together, the "Proposed Intervenors") to intervene as defendants. Plaintiffs in all three cases have opposed the motion. Defendants (collectively, "HHS") have neither consented to intervention nor conveyed to the Court their reasons for declining consent. For the following reasons, the Court grants the Proposed Intervenors' motion to intervene.

**I.  Background**

The Rule at issue interprets a number of federal conscience and anti-discrimination laws to allow health care providers, including individual medical personnel and affiliated employees,

2

the right broadly to abstain from providing medical services that conflict with their beliefs. The Rule also strengthens HHS's investigative and enforcement tools to ensure that such providers may abstain free from discrimination by their employers.

There are two sets of plaintiffs in these consolidated cases. One consists of state and local governments that are concerned about the impact of the Rule's enforcement mechanisms on states and localities and on their regions' health care plans. The other consists of non-profit organizations or associations which, or whose members, provide health care services of a nature—e.g., relating to family planning and reproductive rights—anticipated to produce abstentions by health care providers under the Rule based on personal beliefs. Plaintiffs argue that the Rule, in various respects, violates the Administrative Procedure Act ("APA"). *See, e.g.*, Dkt. 1[1] ¶¶ 159–82. The governmental plaintiffs also argue that the Rule unconstitutionally encroaches on state sovereignty and reaches beyond the limits of Executive power. *See id.* ¶¶ 183–201.

The Proposed Intervenors represent that they are health care providers whose interests in conscience-based abstention the Rule aims to protect. CMDA states that it seeks to "educate and equip its nearly 20,000 members to glorify God by serving with professional excellence as witnesses of Christ's love and compassion to all people." Dkt. 65 ("CMDA Mem.") at 2–3. CMDA represents that its members believe that certain medical procedures, including abortion and euthanasia, are incompatible with the Christian faith; and that some CMDA members object, on religious grounds, to other medical procedures, such as sterilization and artificial contraception. *Id.* at 3–4. CMDA explains that it "has long advocated for legislative and regulatory action that would protect conscience rights." *Id.* at 4. During the Rule's review

---

[1] Unless otherwise specified, references to the docket in this Opinion refer to the docket of No. 19 Civ. 4676, the lead case.

period, CMDA submitted comments to HHS in support of the Rule. *Id.* at 9. As for Dr. Frost, she represents that she is an OBGYN who has helped lead Women Physicians in Christ, a ministry of CMDA, since 2014. *Id.* She states that she has religious objections to performing certain procedures, including abortion and "sex reassignment surgery."[2] *Id.* at 5. If Dr. Frost's employer ever required her to perform a procedure to which she has a religious objection, Dr. Frost states, she would resign. *Id.*

## II. Procedural History

On May 21, 2019, plaintiffs in 19 Civ. 4676, consisting of state and local governments, filed their Complaint. Dkt. 1. On June 6, 2019, the Court set a schedule for an anticipated motion for a preliminary injunction to enjoin the Rule from taking effect. Dkt. 27.

On June 11, 2019, plaintiffs in 19 Civ. 5433 and 19 Civ. 5435, consisting of health care organizations or associations, filed their complaints. *See* 19 Civ. 5433, Dkt. 1; 19 Civ. 5435, Dkt. 1. On June 12, 2019, plaintiffs in the latter two cases filed motions to consolidate with 19 Civ. 4676. *See* 19 Civ. 5433, Dkt. 12; 19 Civ. 5435, Dkt. 20.

On June 13, 2019, the Court set a schedule on the anticipated preliminary injunction motion in the two newly-filed cases. Dkt. 38. The schedule was keyed to the effective date of the Rule, which was then July 22, 2019.

---

[2] The Court here quotes the term used by the Proposed Intervenors, while noting that the American Medical Association uses different terms—"gender confirmation surgery" or "gender-affirming surgery"—to capture the range of surgical interventions at issue. *See, e.g.*, American Medical Association, Issue Brief: Health Insurance Coverage for Gender-Affirming Care of Transgender Patients (2019), https://www.ama-assn.org/system/files/2019-03/transgender-coverage-issue-brief.pdf; American Medical Association, Patient Reported Outcomes in Gender Confirmation Surgery H-460.893 (2018).

4

On June 14, 2019, plaintiffs in 19 Civ. 4676 filed a motion for a preliminary injunction. Dkts. 41–45. On June 17, 2019, plaintiffs in 19 Civ. 5433 and 19 Civ. 5435 filed a consolidated motion for a preliminary injunction. *See* 19 Civ. 5433, Dkts. 19–21.

On June 25, 2019, the Proposed Intervenors filed a motion to intervene as defendants, Dkt. 64, a memorandum of law in support, Dkt. 65, and declarations from Dr. Frost, M.D., Dkt. 66 ("Frost Decl."), and Dr. David Stevens, M.D., M.A., Dkt. 67 ("Stevens Decl."). The Proposed Intervenors also answered plaintiffs' Complaint. Dkt. 60. On June 26, 2019, plaintiffs filed a letter indicating their intention to respond to the motion to intervene on the schedule set by Local Civil Rule 6.1(b), which would require a response by July 9, 2019. *See* Dkt. 62.

Also on June 26, 2019, the Court granted the motions to consolidate the three actions and directed that 19 Civ. 4676 serve as the lead case. Dkt. 70. The Court also set a briefing schedule on the motion to intervene. However, given the condensed preliminary injunction schedule, the Court did not permit a party submission from the Proposed Intervenors on the preliminary injunction motions. The Court instead authorized the Proposed Intervenors to submit a brief as *amicus curiae*. *Id.*

Later on June 26, 2019, HHS filed a motion to continue the deadline to respond to plaintiffs' motions for a preliminary injunction and set a summary judgment schedule. Dkt. 79. On June 27, 2019, plaintiffs filed a letter in opposition. Dkt. 80. On June 27, 2019, the Court denied HHS's request. Dkt. 82.

On July 1, 2019, the Court entered a stipulation between the parties that postponed the Rule's effective date to November 22, 2019 and vacated the preliminary injunction schedule. Dkt. 90. The Court scheduled a conference to discuss, in light of the Rule's deferred effective date, a new schedule for preliminary injunction and/or summary judgment motions and solicited the parties' views as to such a schedule. Dkt. 91.

On July 9, 2019, plaintiffs in all three consolidated cases filed a memorandum of law in opposition to the Proposed Intervenors' motion to intervene. Dkt. 109 ("Pl. Mem.").

On July 12, 2019, the Court held a conference to discuss a revised schedule. On July 16, 2019, the Court issued a new schedule, which contemplated the prompt production by HHS of the administrative record, contemporaneous briefing during August and September 2019 of the motions for a preliminary injunction and for summary judgment, and oral argument on Friday, October 18, 2019. Dkt. 121.

Also on July 16, 2019, the Proposed Intervenors filed a reply memorandum of law in support of their motion to intervene. Dkt. 127 ("CMDA Reply").

On July 22, 2019, as directed by the schedule set by the Court, HHS produced the administrative record. See Dkt. 132.

### III. Discussion

#### A. Applicable Legal Standards

Intervention of right under Federal Rule of Civil Procedure 24(a)(2) is proper when "all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

Independently, a court also has discretion to permit intervention if (1) a motion is timely, and (2) the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). A court weighing permissive

intervention "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3).

**B.  Analysis**

**1.  Intervention of Right**

Plaintiffs do not dispute that the Proposed Intervenors' motion is timely. The Proposed Intervenors first learned of this lawsuit on May 21, 2019, and moved to intervene promptly after retaining counsel, on June 25, 2019. CMDA Mem. at 12. The Court's analysis therefore focuses on the remaining three requirements of Rule 24(a)(2): whether the Proposed Intervenors have an interest in the subject of this action; whether the Proposed Intervenors would be unable to protect that interest absent intervention; and whether that interest is inadequately represented by the other parties.

For an interest to be cognizable under Rule 24 it must be "direct, substantial, and legally protectable." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (citations omitted). The Proposed Intervenors argue that, as intended beneficiaries of the Rule, they have a legally protectable interest in "ensuring that federal conscience protections are enforceable and effective." CMDA Reply at 4. Citing CMDA's formal comments submitted to HHS during the agency's consideration of the Rule, the Proposed Intervenors state that, without the conscience protections contained in the Rule, "many CMDA members may be compelled to leave the practice of medicine." CMDA Mem. at 13–14. Plaintiffs counter that the Proposed Intervenors have not sufficiently alleged harm from the potential invalidation of the Rule. Plaintiffs argue that an exodus from medicine has not occurred "in the decades in which the federal government enforced the underlying refusal statutes without the . . . Rule in effect," and doubt, as to Dr. Frost, that, as a physician at a faith-based healthcare organization, she would be personally impacted by the Rule or its invalidation. Pl. Mem. at 6.

7

The Court holds that the Proposed Intervenors have asserted a cognizable interest in this action. The Proposed Intervenors are correct that "[w]hile Plaintiffs are entities *subject* to the rule, and Defendants are responsible for *enforcing* the rule, Doctor Frost—and CMDA's nearly 20,000 other members—are the ones *protected* by the rule." CMDA Mem. at 16.

Plaintiffs' arguments are more germane to Rule 24(a)(2)'s third requirement: that, absent intervention, the disposition of this action would impair or impede the Proposed Intervenors' ability to protect their interests. The Proposed Intervenors note that the Rule "describes numerous recent cases in which religious healthcare professionals have been targeted for their beliefs or disciplined for refusing to perform or assist in the performance of procedures that violate their consciences." CMDA Reply at 3.

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006), is apposite authority on this issue. At issue in *Lockyer* was the Weldon Amendment, enacted by Congress in 2004, which prevented federal, state, and local governments from receiving certain federal funds if they discriminated against health care providers that refused to provide abortions. *Id.* at 439. A California statute compelled emergency health care providers to deliver medical services for any condition in which a person was in danger of loss of life, and therefore was potentially implicated in situations when an abortion was necessary to preserve the life or health of a patient. The State of California brought suit to invalidate the Weldon Amendment as unconstitutional. The Ninth Circuit held that the proposed intervenors in that suit—healthcare providers with religious objections to performing abortions—had a significant protectable interest that would be affected by the lawsuit's disposition. The Ninth Circuit explained that "[s]hould California prevail in this lawsuit, it will be free to prosecute health care providers for failure to provide emergency abortion services." *Id.* at 442. And, the Ninth Circuit noted, the proposed

intervenors lacked an "alternative forum where they [could] mount a robust defense of the Weldon Amendment." *Id.*

*Lockyer* is persuasive authority on Rule 24(a)(2)'s third requirement. Here, as in *Lockyer*, invalidation of the Rule would leave the Proposed Intervenors with fewer legal protections for their exercise of moral or religious objections to certain medical procedures. The Court thus holds that the disposition of this case may, as a practical matter, affect the Proposed Intervenors.

The Court finally turns to Rule 24(a)(2)'s fourth requirement: whether the Proposed Intervenors' interests are adequately represented by the existing parties. This question is close. Although "the burden to demonstrate inadequacy of representation is generally speaking 'minimal,'" *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)), "[w]here there is an identity of interest" among a proposed intervenor and the party whose position it supports, "the movant to intervene must rebut the presumption of adequate representation by the party already in the action," *id.* at 179–80 (citing *USPS v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)). Additionally, "[t]he proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*." *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) (citing *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984)). As the Ninth Circuit in *Lockyer* put the point: "[T]here is . . . an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." 450 F.3d at 443 (internal quotation marks and citations omitted),

Here, defendant HHS and the Proposed Intervenors share the same goal: upholding the Rule. *See* Pl. Mem. at 8; CMDA Mem. at 16. The Proposed Intervenors therefore must rebut the presumption of adequate representation by HHS. They make three arguments why HHS's representation will not adequately represent their interests.

First, the Proposed Intervenors argue that they "are uniquely situated to provide the Court with the perspective of physicians and medical professionals who advocated for the Rule and rely on it to protect their conscience rights." CMDA Mem. at 16. Plaintiffs counter that this perspective is already contained within the administrative record on which their APA claims will be litigated, insofar as the CMDA submitted comments supporting the Rule. Pl. Mem. at 11. Plaintiffs further argue that evidence outside the administrative record would not be properly considered on their APA claims, which will turn on "whether the agency's action is reasonable and reasonably justified in light of" that record. *Id.*

Plaintiffs are largely but not wholly correct on this point. Insofar as this case turns on an APA challenge to HHS's rulemaking, extra-record evidence from the Proposed Intervenors would have no place. However, the case includes other claims. In particular, the governmental plaintiffs also bring constitutional claims based on the Spending Clause, separation of powers, and the Establishment Clause. *See* Dkt. 1 ¶¶ 183–201. It is possible that evidence outside the administrative record may bear on these claims. Further, in the event that circumstances prevent a reliable resolution of summary judgment motions by the Rule's effective date, the Court would then be obliged to resolve plaintiffs' preliminary injunction motions. As part of that inquiry, the Court would expect to consider the balance of hardships, including the impact of staying the Rule on persons and entities, like the Proposed Intervenors, whose interests the Rule benefits. In this inquiry, too, extra-record evidence may have a proper place. The Proposed Intervenors, however, have not given the Court a compelling reason to believe that, in defending the Rule,

10

HHS would inadequately articulate the perspective of, and the Rule's impact upon, intended beneficiaries of the Rule, such as the Proposed Intervenors. The Court finds, therefore, that this first argument does not overcome the presumption of HHS's adequacy.

Second, the Proposed Intervenors argue, HHS would not adequately represent their interests because, they claim, HHS's interests are not coterminous with theirs. The Proposed Intervenors argue that, to enhance the likelihood that the Rule would be upheld, HHS may endorse a more limited construction of the Rule than favored by the Proposed Intervenors. *Cf. Lockyer*, 450 F.3d at 444–45 (holding that Government's proposed limiting construction to the Weldon Amendment created irreconcilable conflict with proposed intervenors' expansive construction). The Proposed Intervenors further argue that the CMDA has a strong interest in defending the CMDA surveys, which they state formed an evidentiary basis for the Rule, but that HHS may give short shrift to these surveys. Finally, the Proposed Intervenors argue that HHS's recent decision to stipulate to an extension of the Rule's effective date did not respect their interests in an earlier effective date. Plaintiffs dispute that the Proposed Intervenors' interests and HHS's are inconsistent.

On this point, too, the Court holds with plaintiffs. The Court finds the interests of the Proposed Intervenors broadly coterminous with those of HHS. "A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party." *NRDC, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 834 F.2d 60, 62–63 (2d Cir. 1987). "So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." *Id.* at 62. To date, HHS has not indicated any intent to argue for a limited construction of the Rule, let alone a construction at odds with one that the

11

Proposed Intervenors may articulate. The Proposed Intervenors' concern that HHS may mount such a tactical retreat is entirely speculative. The possibility that the Proposed Intervenors may emphasize different evidence in support of a common outcome also does not make HHS's representation of the Proposed Intervenors' interests inadequate. Finally, HHS's agreement to defer the Rule's effective date, a decision uniquely within the executive prerogative and eminently justifiable as a means to assure orderly and measured resolution of the issues in this important case, does not signify that the agency has interests adverse to those of the Rule's beneficiaries.

Third, the Proposed Intervenors argue that because, historically, HHS has changed its position as to the construction of statutes underlying the Rule, in particular, upon changes of Administration, HHS may change course again. The timetable of this litigation makes this concern entirely theoretical. The Court hopes to resolve the parties' anticipated cross-motions for summary judgment by the November 22, 2019, effective date of the Rule. If not, the Court will rule promptly thereafter. And the Proposed Intervenors' argument based on the possibility of a change in policy by a future Administration—an argument available in every case in which the federal Government defends a rule or statute—conflicts with the presumption that the defense by the federal government of its regulations is adequate. *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) ("In allowing intervention in this case we are mindful that the mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits.").

The Court therefore holds that the Proposed Intervenors have not overcome the presumption of HHS's adequate representation of their interests. Accordingly, the Proposed Intervenors have not met the fourth condition of Rule 24(a)(2). They therefore are not entitled to intervention of right.

### 2. Permissive Intervention

A separate question, however, is presented by the Proposed Intervenors' motion for permissive intervention. A "district court's discretion under Rule 24(b) is broad." *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 876 (2d Cir. 1984) (citing *S.E.C. v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972)). And, to grant permissive intervention, Rule 24(b) does not require a finding that party representation be inadequate. *United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980) (adequacy of party representation is "a minor factor at most" under Rule 24(b)). Rather, "while existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will assist in the just and equitable adjudication of any of the issues between the parties." *United States v. N.Y.C. Housing Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) (internal quotation marks and citations omitted); *see also Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17 Civ. 957 (ADS) (AKT), 2017 WL 6459464, at *13 (E.D.N.Y Dec. 15, 2017) (collecting cases finding permissive intervention warranted even where party representation was found adequate).

Here, while the question of permissible intervention can be fairly argued either way, and while the alternative to intervention in which CMDA and Dr. Frost participated together as an *amicus curiae* would equally result in the Court's receipt of the legal analysis that CDMA and Dr. Frost seek to present, the Court's judgment, on balance, is that permitting CMDA and Dr. Frost thus to intervene will assist the Court in resolving issues before it. In particular, the Court is mindful that, should the need arise to resolve a motion for preliminary relief in advance of the resolution of a motion for summary judgment, the Court's close attention to factual issues will be required, particularly as to the balance of hardships occasioned by staying, or not staying, the Rule's effective date. In this inquiry, the Court would benefit from concrete factual submissions

13

from the Proposed Intervenors as to the hardships occasioned by the absence of the Rule on CMDA members and Dr. Frost, much as the Court would benefit from factual submissions by plaintiffs as to the hardships occasioned by the Rule. The Proposed Intervenors, in fact, submitted declarations to this effect in opposition to the earlier preliminary injunction motion. *See* Dkts. 88-2 (declaration of Dr. David Stevens), 88-3 (declaration of Dr. Regina Frost).

On the opposite side of the equation, there is no palpable harm in permitting this participation. The Proposed Intervenors' motion to intervene is timely. Intervention will not unduly delay, or prejudice, the adjudication of the original parties' rights. It will not occasion any revision of the existing schedule. The Proposed Intervenors' submissions will be due on the same dates as HHS's. And intervention comports with Rule 24(b)(1), insofar as the Proposed Intervenors will litigate common questions of law and fact with those to be litigated by the parties. *See* Fed. R. Civ. P. 24(b)(1). Finally, plaintiffs cannot claim an appreciable burden from having to respond to the legal arguments by Proposed Intervenors, whose submission as *amicus curiae* the Court otherwise assuredly would have received.

In recognition of HHS's lead role in the defense of this case, the Court will impose tighter page limits on the Proposed Intervenors' submissions than on HHS's, as set forth below. In the event that plaintiffs determine that the need to respond to the intervenors' briefs necessitates additional space for plaintiffs' responsive briefs, the Court will be receptive to an application for an enlargement of plaintiffs' page limits.

## CONCLUSION

For the reasons reviewed above, the Court denies CMDA and Dr. Frost's motion for intervention of right but grants their motion for permissive intervention. The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. 64 and to add Dr. Regina Frost and the Christian Medical and Dental Association to the caption of this case as defendants.

14

The Court authorizes CMDA and Dr. Frost to file a single consolidated brief, not to exceed 30 pages, in opposition to plaintiffs' motions for a preliminary injunction by August 14, 2019. They are also at liberty, within that single brief and that page limit, to move for summary judgment. In the event that CMDA and Dr. Frost do so move, their reply in support of the motion for summary judgment, not to exceed 15 pages, is due September 19, 2019. The Court will permit CMDA and Dr. Frost's counsel to participate in argument on October 18, 2019.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 2, 2019
      New York, New York