UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*<br><br>    *Plaintiffs*,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, *in his official capacity as Secretary of the United States Department of Health and Human Services*; and UNITED STATES OF AMERICA,<br><br>    *Defendants*,<br><br>DR. REGINA FROST and CHRISTIAN MEDICAL AND DENTAL ASSOCIATIONS,<br><br>    *Defendants-Intervenors*. | No. 1:19-cv-04676-PAE<br>(consolidated with 1:19-cv-05433-PAE; 1:19-cv-05435-PAE)<br><br>**DEFENDANTS-INTERVENORS' LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; and PLANNED PARENTHOOD OF NORTHERN NEW ENGLAND, INC.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>ALEX M. AZAR II, *in his official capacity as Secretary, United States Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROGER SEVERINO, *in his official capacity as Director, Office for Civil Rights*, United States Department of Health and Human Services; and OFFICE FOR CIVIL RIGHTS, United States Department of Health and Human Services,<br><br>    *Defendants*. | No. 1:19-cv-05433-PAE<br>(consolidated with 1:19-cv-0476-PAE; 1:19-cv-05435-PAE) |

|  |  |
|---|---|
| NATIONAL FAMILY PLANNING AND REPRODUCTIVE HEALTH ASSOCIATION; and PUBLIC HEALTH SOLUTIONS,<br><br>      *Plaintiffs*,<br><br>      v.<br><br>ALEX M. AZAR II, *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROGER SEVERINO, *in his official capacity as Director of the Office for Civil Rights of the U.S. Department of Health and Human Services*; OFFICE FOR CIVIL RIGHTS of the U.S. Department of Health and Human Services,<br><br>      *Defendants*. | No. 1:19-cv-05435-PAE<br>(consolidated with 1:19-cv-0476-PAE; 1:19-cv-05433-PAE) |

    Pursuant to Local Rule 56.1 and the Court's Individual Practices, Defendants-Intervenors Dr. Regina Frost and the Christian Medical and Dental Associations (CMDA) submit the following statement of material facts to which there is no genuine issue to be tried.

    1.  CMDA was founded in 1931 and educates and equips its members to glorify God by serving with professional excellence as witnesses of Christ's love and compassion to all people. CMDA affirms that it is the duty of Christian healthcare professionals to treat every patient with compassion, "regardless of sexual orientation, gender identification, or family makeup," even if this puts the provider's safety at risk. Stevens Decl. ¶¶ 6, 11-12.

    2.  The United States has a long history of providing legal accommodations to religious objectors. Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise*

*of Religion*, 103 Harv. L. Rev. 1409, 1467-71 (1990); Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793, 1803-08 (2006). Some of these accommodations specifically address issues within the medical profession. *See* Mark L. Rienzi, *The Constitutional Right Not to Kill*, 62 Emory L.J. 121, 137-153 (2012) (discussing state statutes giving physicians accommodations from having to perform executions, assist suicide, or conduct abortions).

    3.    Congress has passed numerous pieces of legislation to protect conscience rights for healthcare providers.

    a.    The Church Amendments prohibit government entities that receive certain federal funds from discriminating against "those who hold religious beliefs or moral convictions regarding certain health care procedures," including abortion and sterilization. 84 Fed. Reg. at 23,171; *see* 42 U.S.C. § 300a-7(c)(1).

    b.    The Coats-Snowe Amendment "applies nondiscrimination requirements to the Federal government, and to State and local governments receiving Federal financial assistance," and prohibits those government entities from "discriminat[ing] against any health care entity" that refuses to facilitate abortions or train its employees to perform abortions. 84 Fed. Reg. at 23,171; *see* 42 U.S.C. §§ 238n(a), (c)(2).

    c.    The Weldon Amendment strips federal funds from any federal agency, State, or local government that "subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions." 84

3

        Fed. Reg. at 23,172; *see* Pub. L. No. 115-245 § 507(d)(1), 132 Stat. 2981, 3118 (2018).

    d.    The Patient Protection and Affordable Care Act ("ACA") prohibits the federal government and any entity receiving federal funds under the ACA "from discriminating against an individual or institutional health care entity because of [its] objection to providing any health care items or service for the purpose of causing or assisting in causing death, such as by assisted suicide, euthanasia, or mercy killing." 84 Fed. Reg. at 23,172. The ACA also prohibits health plans offered through a healthcare exchange from "discriminat[ing] against any individual health care provider or health care facility because of the facility or provider's unwillingness to provide, pay for, provide coverage of, or refer for abortions." *Id.*; 42 U.S.C. §§ 18113, 18023(a)(1), (b)(1)(A), (b)(4).

    e.    Other appropriations bills and statutes similarly prohibit federally funded entities from violating the conscience rights of healthcare professionals who have religious objections to abortion, sterilization, or euthanasia. 84 Fed. Reg. at 23,172-74.

4.    In 2008, HHS issued a regulation clarifying "the substantive requirements and applications of the Church, Coats-Snowe, and Weldon Amendments." 84 Fed. Reg. at 23,174; *see Ensuring That Department of Health and Human Services Funds Do Not Support Coercive or Discriminatory Policies or Practices in Violation of Federal Law*, 73 Fed. Reg. 78,072 (Dec. 19, 2008), *codified at* 45 C.F.R. § 88 (2008) (the "2008 Rule").

5. The 2008 Rule provided that those Amendments "and the implementing regulations '[we]re to be interpreted and implemented broadly to effectuate their protective purposes.'" 84 Fed. Reg. at 23,174 (quoting the 2008 Rule). It "required covered federally funded entities to provide written certification of compliance with the laws encompassed by the 2008 Rule." *Id.* And it "designated HHS [Office of Civil Rights ("OCR")] to receive complaints based on the three specified Federal conscience and anti-discrimination laws, and directed OCR to coordinate handling those complaints with the Departmental components from which the covered entity receive[d] funding." *Id*. The certification requirement, in combination with the complaint mechanism, provided HHS with a means of ensuring compliance with federal conscience protections.

6. In March 2009, HHS proposed to rescind the rule. HHS issued a new rule in 2011 that removed all of the substantive provisions of the 2008 Rule. *See Regulation for the Enforcement of Federal Health Care Provider Conscience Protection Laws*, 76 Fed. Reg. 9,968 (Feb. 23, 2011), *codified at* 45 C.F.R. § 88.2 (2011) ("2011 Rule"). Although the 2011 Rule continued to designate OCR "to receive complaints based on the Federal health care provider conscience protection statutes," it eliminated the certification requirement, the primary enforcement mechanism put in place by the 2008 Rule. 84 Fed. Reg. at 23,174.

7. Following the 2011 Rule, numerous states and municipalities enacted laws infringing on the conscience rights protected by the Church, Coats-Snowe, and Weldon Amendments. 84 Fed. Reg. at 23,176-77. This resulted in "an increase in lawsuits against State and local laws that plaintiffs allege[d] violate[d] conscience or unlawfully discriminate[d]." *Id.* at 23,176. Complaints filed with OCR alleging violations of federal law also significantly increased after the 2011 Rule.

8. In 2018, HHS proposed a new rule "to enhance the awareness and enforcement of Federal health care conscience and associated anti-discrimination laws, to further conscience and religious freedom, and to protect the rights of individuals and entities to abstain from certain activities related to health care services without discrimination or retaliation." 83 Fed. Reg. 3,880, 3,881 (Jan. 26, 2018).

9. In doing so, HHS considered and addressed many comments and concerns. Some examples follow.

10. In promulgating the Conscience Rule, HHS considered and addressed concerns that the Rule would decrease access to health care for certain patient groups, and in certain parts of the country, such as rural areas. 84 Fed. Reg. at 23,253-54.

11. HHS considered and addressed comments regarding accommodations for religious objectors. 84 Fed. Reg. at 23,191-92.

12. HHS considered and addressed comments regarding the Rule's relationship to other Federal, State, and local laws. 84 Fed. Reg. at 23,223-26.

13. HHS considered and addressed comments regarding the Rule's interaction with Title VII, the Emergency Medical Treatment and Labor Act, the Patient Protection and Affordable Care Act, and Title X. 84 Fed. Reg. at 23,182-83, 23,190-92, 23,200-01, 23,208-09, 23,218, 23,223-24.

14. HHS considered and addressed comments that the Rule was unnecessary because existing law adequately protected conscience rights. 84 Fed. Reg. at 23,183.

15. HHS considered and addressed comments regarding principles of informed consent. 84 Fed. Reg. at 23,189, 23,200.

16. HHS considered and addressed comments that the Affordable Care Act does not allow healthcare professionals to "omit information about 'all choices' available at end-of-life because a patient has a right to be informed." 84 Fed. Reg. at 23, 208.

17. HHS considered and addressed comments that "advanced directives should be followed regardless of a physician's personal objections." 84 Fed. Reg. at 23,210.

18. HHS considered and addressed comments regarding the definitions of "health care entity," "assist in the performance," and "discriminate" or "discrimination." 84 Fed. Reg. at 23,186-204.

19. HHS considered and addressed comments that the definition of "health care entity" was too *narrow* and should be expanded. 84 Fed. Reg. at 23,194, 23,196.

20. HHS considered and addressed comments that the definition of "health care entity" exceeded statutory authority. 84 Fed. Reg. at 23,194.

21. HHS considered and addressed comments that the definition of "referral or refer for" "appropriately allows healthcare professionals to abide by their own professional and ethical judgments," 84 Fed. Reg. at 23,199, and it considered and addressed comments to the contrary, 84 Fed. Reg. at 23,200. *See also* 84 Fed. Reg. at 23,201-02.

22. HHS considered and addressed comments that the definition of "discriminate or discrimination" would result in double-staffing certain positions. 84 Fed. Reg. at 23,191.

23. HHS considered and addressed comments regarding "counseling" and "referring." 84 Fed. Reg. at 23,188.

24. HHS considered and addressed comments that the definition of "referral or refer for" could result in a provider refusing to refer a patient to an OB/GYN for any reason. 84 Fed. Reg. at 23,202.

25. HHS considered and addressed comments stating employers should be permitted to ask employees and prospective employees about their religious beliefs both before and after they are hired. 84 Fed. Reg. at 23,191-92.

26. HHS considered and addressed comments regarding the phrase "articulable connection" and the need for a reasonableness standard. 84 Fed. Reg. at 23,187.

27. HHS considered and addressed comments on whether it had authority to issue regulations implementing the federal conscience statutes. 84 Fed. Reg. at 23,183-85.

28. HHS considered and addressed comments that the Church Amendments should be limited to providing protections only for abortions and sterilizations. 84 Fed. Reg. at 23,204-05.

29. HHS considered and addressed comments that the Coats-Snowe Amendment cannot justify rulemaking authority. 84 Fed. Reg. at 23,205-06.

30. HHS considered and addressed comments both supportive and against including the Weldon Amendment in the proposed rule. 84 Fed. Reg. at 23, 207-08.

31. HHS considered and addressed comments regarding threatened funding streams, including for sub-recipients' violations. 84 Fed. Reg. at 23,220, 23,223-24.

32. HHS considered and addressed comments regarding conditioning receipt of federal funds on receiving assurance and certification. 84 Fed. Reg. at 23,215.

33. HHS considered and addressed comments regarding notice requirements. 84 Fed. Reg. at 23,217-18.

34. HHS considered and addressed comments that "any assurance of compliance be acquired through form HHS-690." 84. Fed. Reg. at 23,214.

35. HHS considered and addressed comments regarding ectopic pregnancies. 84 Fed. Reg. at 23,188.

36. HHS considered and addressed comments that the Rule violated the Equal Protection Clause. 84 Fed. Reg. at 23,225-26.

37. HHS considered and addressed comments that the Rule violated the Eighth Amendment. 84 Fed. Reg. at 23,225.

38. HHS considered and addressed comments that the Rule violated the Establishment Clause. 84 Fed. Reg. at 23,225.

39. HHS conducted a robust regulatory impact analysis. 84 Fed. Reg. at 23,226-45.

40. HHS analyzed several estimated benefits of the rule. 84 Fed. Reg. at 23,246-55.

Dated:   August 14, 2019

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Allyson N. Ho*

Daniel Blomberg (*pro hac vice*)
Nicholas Reaves (*pro hac vice*)
THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 New Hampshire Ave. NW, Suite 700
Washington, D.C. 20036
Telephone: 202.955.0095
Facsimile: 202.955.0090

*Attorneys for Defendants-Intervenors DR. REGINA FROST AND CHRISTIAN MEDICAL AND DENTAL ASSOCIATIONS*

Allyson N. Ho (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

Robert E. Dunn (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1811 Page Mill Road
Palo Alto, California 94304
Telephone: 650.849.5300
Facsimile: 650.849.5333

Jason H. Hilborn (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant-Intervenor CHRISTIAN MEDICAL AND DENTAL ASSOCIATIONS*