**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 1:19-cv-4676-PAE<br>(Rel. 1:19-cv-05433-PAE; 1:19-cv-05435-PAE)<br><br>***AMICUS CURIAE* BRIEF OF AMERICAN CENTER FOR LAW & JUSTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>ALEX M. AZAR II, *in his official capacity as Secretary of the United States Department of Health and Human Services, et al.*,<br><br>Defendants. | No. 1:19-cv-05433-PAE<br>(rel. 1:19-cv-04676-PAE; 1:19-cv-05435-PAE) |
| NATIONAL FAMILY PLANNING AND REPRODUCTIVE HEALTH ASSOCIATION, et al.,<br>Plaintiffs,<br><br>v.<br><br>ALEX M. AZAR II, *in his official capacity as Secretary of the United States Department of Health and Human Services, et al.*, | No. 1:19-cv-05435-PAE<br>(rel. 1:19-cv-04676-PAE; 1:19-cv-05433-PAE) |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

CORPORATE DISCLOSURE STATEMENT ................................................................................ 1

INTEREST OF AMICUS ................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 2

      I.      It Has Been the Historical Practice and Understanding of this Country
            that Conscience Rights Should Be Protected ................................................................ 3

      II.     Because the Final Rule Does Not Grant Religious Beliefs Preferential
            Status over Non-Religious Beliefs it Cannot Violate the Establishment Clause .............. 8

      III.    Alleged Burdens on Third Parties Do Not Suffice to Create an
            Establishment Clause Violation ..................................................................................... 12

CONCLUSION ................................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*Adamson v. Superior Ambulance Serv.*,
  No. 04C-3247 (N.D. Ill. filed May 7, 2004) ................................................................. 2

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013) .................................................................................................. 13

*Am. Legion v. Am. Humanist Ass'n*,
  139 S. Ct. 2067 (2019) ................................................................................................ 4

*Am. Pulverizer Co. v. U.S. HHS*,
  No. 6:12-cv-03459-MDH (W.D. Mo. Oct. 19, 2012) .................................................. 1

*Bd. of Airport Comm'rs v. Jews for Jesus*,
  482 U.S. 569 (1987) .................................................................................................... 1

*Bd. of Educ. v. Mergens*,
  496 U.S. 226 (1990) .................................................................................................... 1

*Bick Holdings, Inc. v. U.S. HHS*,
  No. 4:13-cv-00462-AGF (E.D. Mo. Mar. 13, 2013) .................................................... 2

*Bowen v. Kendrick*,
  487 U.S. 589 (1988) .................................................................................................. 12

*Burwell v. Hobby Lobby*,
  573 U.S. 297 (2014) .................................................................................................... 2

*City of Allegheny v. ACLU*,
  492 U.S. 573 (1989) .................................................................................................... 4

*City of Boerne v. Flores*,
  521 U.S. 507(1997) ..................................................................................................... 6

*Commack Self-Service Kosher Meats, Inc. v. Hooker*,
  680 F.3d 194, 209 (2d Cir. 2012)…………………………………………………...11

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,
  483 U.S. 327 (1987) .................................................................................................... 5

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) .................................................................................................... 5

*Doe v. Bolton*,
 410 U.S. 179 (1973) .................................................................................................... 9, 10

*Elmbrook Sch. Dist. v. Doe*,
 573 U.S. 922 (2014) .......................................................................................................... 4

*Estate of Thornton v. Caldor, Inc.*,
 472 U.S. 703 (1985) ........................................................................................................ 13

*Gilardi v. U.S. HHS*,
 733 F.3d 1208 (D.C. Cir. 2013) ........................................................................................ 1

*Gillette v. United States*,
 401 U.S. 437 (1970) .......................................................................................................... 9

*Girouard v. United States*,
 328 U.S. 61 (1946) ............................................................................................................ 9

*Harris v. McCrae*,
 448 U.S. 297 (1980) ........................................................................................................ 14

*Hartenbower v. U.S. HHS*,
 No. 1:13-cv-2253 (N.D. Ill. Mar. 26, 2013) ..................................................................... 2

*Hosanna-Tabor Lutheran Church & School v. Equal Emp't Opportunity Comm'n*,
 565 U.S. 171 (2012) ........................................................................................................ 17

*Korte v. Sebelius*,
 735 F.3d 654 (7th Cir. 2013) ............................................................................................ 1

*Lamb's Chapel v. Ctr. Moriches Sch. Dist.*,
 508 U.S. 384 (1993) .......................................................................................................... 1

*Lemon v. Kurtzman*,
 403 U.S. 602 (1971) .......................................................................................................... 5

*Lindsay v. U.S. HHS*,
 No. 1:13-cv-01210 (N.D. Ill. Feb. 14, 2013) ................................................................... 2

*Maher v. Roe*,
 432 U.S. 464 (1977) ........................................................................................................ 14

*McConnell v. FEC*,
 540 U.S. 93 (2003) ............................................................................................................ 1

*McGowan v. Maryland*,

366 U.S. 420 (1961) ............................................................................................................ 14

*Moncivaiz v. Dekalb*,
    No. 03-C-50226, 2004 U.S. Dist. LEXIS 3997 (N.D. Ill. Mar. 12, 2004) ................................... 2

*Nead v. Eastern Ill. Univ.*,
    No. 05-2137, 2006 U.S. Dist. LEXIS 36897 (C.D. Ill. June 6, 2006) ....................................... 2, 3

*O'Brien v. U.S. HHS*,
    766 F.3d 862 (8th Cir. 2014) ..................................................................................................... 1

*Pleasant Grove Cty. v. Summum*,
    555 U.S. 460 (2009) ................................................................................................................... 1

*Roe v. Wade*,
    410 U.S. 113 (1973) ................................................................................................................... 9

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203 (1963) ................................................................................................................... 4

*Texas Monthly, Inc. v. Bullock*,
    489 U.S. 1 (1989) ..................................................................................................................... 13

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014) ................................................................................................................... 4

*Vandersand v. Wal-Mart Stores, Inc.*,
    525 F. Supp. 2d 1052 (C.D. Ill. 2007) ....................................................................................... 2

*Walz v. Tax Comm'n of the City of New York*,
    397 U.S. 664 (1970) ................................................................................................................. 12

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ................................................................................................................. 12

*Zubik v. Burwell,*
    136 S. Ct. 1557 (2016) ............................................................................................................... 2

**Statutes**

18 U.S.C. § 3597 .............................................................................................................................. 16

42 U.S.C. § 238n .............................................................................................................................. 11

42 U.S.C. § 300a-7 ........................................................................................................................... 10

Ariz. Rev. Stat. § 36-2154 ............................................................................................................. 15

Consolidated Appropriations Act, Pub. L. No. 111-117, 123 Stat. 3034 (2009) ....................... 11

Ga. Code Ann. § 16-12-142 ......................................................................................................... 15

Idaho Code § 18-612 (2016) ........................................................................................................ 15

Mont. Code Ann. § 50-20-111 ..................................................................................................... 15

**Regulations**

84 Fed. Reg. 23170 (May 21, 2019) .............................................................................................. 2

**Legislative Materials**

119 Cong. Rec. 17,462-63 (1973) .................................................................................................. 8

**Other Authorities**

Arlin M. Adams & Charles J. Emmerich, *A Heritage of Religious Liberty*,
    137 U. Pa. L. Rev. 1559 (1989) ............................................................................................. 7

Brett G. Scharffs, *The Autonomy of Church and State*,
    2004 BYU L. Rev. 1217 (2004) ............................................................................................. 6

James Madison, A Memorial and Remonstrance Against Religious Assessments (1785), *in The Sacred Rights of Conscience* (Daniel L. Dreisbach & Mark David Hall eds., 2009) .................... 7

James Madison, Property (March 29, 1792), *in The Founders' Constitution*
    (P. Kurland & R. Lerner eds., 1987) ...................................................................................... 7

Letter from President George Washington to the Annual Meeting of Quakers (1789*)*, *in The Papers of George Washington* (W.W. Abbot & Dorothy Twohig eds., 1993) ............................. 8

Letter from President Thomas Jefferson to the Society of the Methodist Episcopal
    Church at New London, Conn. (Feb. 4, 1809) ...................................................................... 9

Mark L. Rienzi, *The Constitutional Right Not to Participate in Abortions: Roe, Casey, and the Fourteenth Amendment Rights of Healthcare Providers*, 87 Notre Dame L. Rev. 1 (2011) ........ 10

Michael McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*,
    103 Harv. L. Rev. 1409 (1990) ......................................................................................... 6, 7

Michael Novak & Jana Novak, *Washington's God: Religion, Liberty, and the
    Father of Our Country* (2006) ............................................................................................... 8

Thomas Jefferson, Notes on the State of Virginia, *in The Basic Writings of Thomas Jefferson*
    (Philip S. Foner ed., 1944) ..................................................................................................... 9

**CORPORATE DISCLOSURE STATEMENT**

The American Center for Law and Justice is a nonprofit organization that has no parent and issues no stock.

**INTEREST OF *AMICUS*[1]**

The American Center for Law & Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties secured by law. ACLJ attorneys have argued before the Supreme Court of the United States in a number of significant cases involving the freedoms of speech and religion.[2] In addition, the ACLJ represented thirty-two individuals and for-profit corporations in seven legal actions against the federal government's contraceptive services mandate ("Mandate").[3] The ACLJ also submitted amicus briefs with the U.S. Supreme Court in support of petitioners in both *Burwell v. Hobby Lobby*, 573 U.S. 297 (2014), and *Zubik v. Burwell,* 136 S. Ct. 1557 (2016).

The ACLJ has represented, and continues to represent, individuals who have suffered adverse employment action based on their objection to facilitating or participating in abortions or abortion-inducing drugs. *See Vandersand v. Wal-Mart Stores, Inc.*, 525 F. Supp. 2d 1052 (C.D. Ill. 2007); *Nead*

---

[1] The American Center for Law Justice files this brief pursuant to the Court's order, dated July 16, 2019, allowing amicus briefs in support of Defendants, provided such briefs are filed on or before August 21, 2019. ECF Entry 121.

[2] *See*, *e.g*., *Pleasant Grove Cty. v. Summum*, 555 U.S. 460 (2009) (holding that the government is not required to accept counter-monuments when it displays a war memorial or Ten Commandments monument); *McConnell v. FEC*, 540 U.S. 93 (2003) (holding that minors have First Amendment rights); *Lamb's Chapel v. Ctr. Moriches Sch. Dist*., 508 U.S. 384 (1993) (holding that denying a church access to public school premises to show a film series violated the First Amendment); *Bd. of Educ. v. Mergens*, 496 U.S. 226 (1990) (holding that allowing a student Bible club to meet on a public school's campus did not violate the Establishment Clause); *Bd. of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569 (1987) \(striking down an airport's ban on First Amendment activities).

[3] *Gilardi v. U.S. HHS*, 733 F.3d 1208 (D.C. Cir. 2013); *Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013); *O'Brien v. U.S. HHS*, 766 F.3d 862 (8th Cir. 2014); *Am. Pulverizer Co. v. U.S. HHS*, No. 6:12-cv-03459-MDH (W.D. Mo. Oct. 19, 2012); *Lindsay v. U.S. HHS*, No. 1:13-cv-01210 (N.D. Ill. Feb. 14, 2013); *Bick Holdings, Inc. v. U.S. HHS*, No. 4:13-cv-00462-AGF (E.D. Mo. Mar. 13, 2013); *Hartenbower v. U.S. HHS*, No. 1:13-cv-2253 (N.D. Ill. Mar. 26, 2013).

*v. Eastern Ill. Univ.*, No. 05-2137, 2006 U.S. Dist. LEXIS 36897 (C.D. Ill. June 6, 2006); *Adamson v. Superior Ambulance Serv.*, No. 04C-3247 (N.D. Ill. filed May 7, 2004); *Moncivaiz v. Dekalb*, No. 03-C-50226, 2004 U.S. Dist. LEXIS 3997 (N.D. Ill. Mar. 12, 2004).

In *Nead*, a nurse brought suit against her public employer alleging that she was passed over for a promotion based on her objection to participating in emergency contraception protocols. The district court rejected the nurse's claim under the Church Amendment, holding that the Church Amendment does not confer a private right of action. 2006 U.S. Dist. LEXIS 36897, at *13–14.

Amicus believes that "Protecting Statutory Conscience Rights in Health Care; Delegations of Authority," published in the Federal Register on Tuesday, May 21st, 2019, 84 Fed. Reg. 23170 (May 21, 2019) ("Final Rule"), is a necessary and critical tool to ensure that federal conscience laws, including the Church Amendment, are obeyed and enforced. The Final Rule is undeniably correct that, because no court has yet held that the Church Amendment confers a private right of action, it is all the more necessary for Defendants "to provide clear and appropriate interpretation of Federal conscience and anti-discrimination laws, to engage in outreach to protected parties and covered entities, to conduct compliance reviews, to investigate alleged violations, and to vigorously enforce those laws." 84 Fed. Reg. at 23178.

Amicus believes that the Final Rule comports fully with the Administrative Procedure Act. It respectfully submits this brief, however, to argue one point: because the Rule does not violate the Establishment Clause, Plaintiffs have no likelihood of succeeding on the merits of that claim.

**ARGUMENT**

The Final Rule enforces federal laws protecting the conscience of those providing health care. As such, this rule fits within the grand, national tradition of respecting individual conscience, particularly in the context of controversial matters like abortion. The Final Rule does not violate the Establishment Clause.

### I. IT HAS BEEN THE HISTORICAL PRACTICE AND UNDERSTANDING OF THIS COUNTRY THAT CONSCIENCE RIGHTS SHOULD BE PROTECTED.

In *Town of Greece v. Galloway*, 572 U.S. 565, 566 (2014), the Supreme Court held that "the Establishment Clause must be interpreted 'by reference to historical practices and understandings.'" *Id*. at 576 (quoting *City of Allegheny v. ACLU*, 492 U.S. 573, 603 (1989) (Kennedy, J., concurring)). The line "between the permissible and the impermissible" under the Establishment Clause is "one which accords with history and faithfully reflects the understanding of the Founding Fathers." *Id*. at 577 (quoting *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 294 (1963) (Brennan, J., concurring)). *See also Elmbrook Sch. Dist. v. Doe*, 573 U.S. 922, 925 (2014) (Scalia, J., dissenting from denial of certiorari) ("*Town of Greece* left no doubt that the Establishment Clause must be interpreted by reference to historical practices and understandings.") (internal quotations omitted).

This past term in *American Legion v. American Humanist Association*, 139 S. Ct. 2067 (2019), the Court reaffirmed the historical approach adopted in *Town of Greece.* Once again disdaining the "grand unified theory" of the *Lemon* test,[4] the Court favored *Town of Greece*'s "more modest approach that focuses on the particular issue at hand and looks to history for guidance." *Id*. at 2087. *See also id*. at 2022 (Kavanaugh, J., concurring) ("[T]he Court today applies a history and tradition test.").

Importantly, *Lemon* is dead. *American Legion* put another nail in *Lemon*'s coffin. The plurality opinion refused to apply *Lemon*, 139 S. Ct. at 2087, and instead summarized its many "shortcomings." *Id*. at 2080. None of the dissenting Justices argued that the *Lemon* test should be revived as the controlling analytical framework in Establishment Clause cases. Justice Kavanaugh catalogued all the Establishment Clause cases in which *Lemon* was either ignored or which were otherwise irreconcilable with *Lemon. Id*. at 2092–93 (Kavanaugh, J., concurring). Included among those were the Court's

---

[4]  *Lemon v. Kurtzman*, 403 U.S. 602 (1971).

3

"accommodations and exemptions" cases. *Id*. at 2092 (citing *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327 (1987); *Cutter v. Wilkinson*, 544 U.S. 709 (2005)). *Estate of Thornton v. Caldor, Inc*., 472 U.S. 703, 709 (1985), upon which Plaintiffs place principal reliance,[5] is of dubious validity given its dependence upon *Lemon*. *See* 544 U.S. at 708 (applying *Lemon* test).

The historical practices and understandings with respect to governmental accommodation of religion, moral convictions, and conscience rights in general are well-established. "The pursuit of religious liberty was one of the most powerful forces driving early settlers to the American continent and remained a powerful force at the time of the founding of the American republic." Brett G. Scharffs, *The Autonomy of Church and State*, 2004 BYU L. Rev. 1217, 1230 (2004). Even before the ratification of the Constitution, "tension between religious conscience and generally applicable laws, though rare, was not unknown." *City of Boerne v. Flores*, 521 U.S. 507, 557 (1997) (O'Connor, J., dissenting). The resolution of conflicts over matters such as "oath requirements, military conscription, and religious assessments" demonstrates that "Americans in the Colonies and early States thought that, if an individual's religious scruples prevented him from complying with a generally applicable law, the government should, if possible, excuse the person from the law's coverage." *Id*. Exemptions were understood as "a natural and legitimate response to the tension between law and religious convictions." Michael McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409, 1466 (1990).

In 1775, for example, the Continental Congress passed a resolution exempting individuals with pacifist religious convictions from military conscription:

---

[5] See Joint Mem. Law, ECF No. 20, at 39.

> As there are some people, who, from religious principles, cannot bear arms in any case, this Congress intend no violence to their consciences, but earnestly recommend it to them, to contribute liberally in this time of universal calamity, to the relief of their distressed brethren in the several colonies, and to do all other services to their oppressed Country, which they can consistently with their religious principles.

*Id*. at 1469 (citation omitted).

The care and concern for religious freedom prior to the ratification of the Constitution was the underlying and animating principle of the religion clauses of the First Amendment:

> The core value of the religion clauses is liberty of conscience in religious matters, an ideal which recurs throughout American history from the colonial period of Roger Williams to the early national period of the Founders. All three traditions of church and state—Enlightenment, pietistic, and political centrist—regarded religious liberty as an inalienable right encompassing both belief and action and as an essential cornerstone of a free society.

Arlin M. Adams & Charles J. Emmerich, *A Heritage of Religious Liberty*, 137 U. Pa. L. Rev. 1559, 1664 (1989).

Examples of this truth are seen most clearly in the writings of the Founding Fathers themselves. James Madison, the Father of the Constitution, opined that "[c]onscience is the most sacred of all property," and that man "has a property of peculiar value in his religious opinions, and in the profession and practice dictated by them." James Madison, Property (March 29, 1792), *in The Founders' Constitution* (P. Kurland & R. Lerner eds., 1987). He understood that one's duty to the "Creator . . . is precedent, both in order of time and in degree of obligation, to the claims of Civil Society." James Madison, A Memorial and Remonstrance Against Religious Assessments (1785), *in The Sacred Rights of Conscience,* 309 (Daniel L. Dreisbach & Mark David Hall eds., 2009). "The Religion . . . of every man must be left to the conviction and conscience of every man," preventing efforts to "degrade[] from the equal rank of Citizens all those whose opinions in Religion do not bend to those of the Legislative authority." *Id*.

George Washington, the Father of the Country, noted that "the establishment of Civil and Religious Liberty was the Motive that induced me to the field of battle." Michael Novak & Jana Novak, *Washington's God: Religion, Liberty, and the Father of Our Country* 111 (2006). In his famous 1789 letter to the Quakers, he wrote:

> The conscientious scruples of all men should be treated with great delicacy and tenderness: and it is my wish and desire that the laws may always be extensively accommodated to them, as a due regard for the protection and essential interests of the nation may justify and permit.

Letter from President George Washington to the Annual Meeting of Quakers (1789*)*, *in The Papers of George Washington*, 266 (W.W. Abbot & Dorothy Twohig eds., 1993).

Thomas Jefferson observed that "[n]o provision in our Constitution ought to be dearer to man than that which protects the rights of conscience against the enterprises of the civil authority." Letter from President Thomas Jefferson to the Society of the Methodist Episcopal Church at New London, Conn. (Feb. 4, 1809). Like Madison, Jefferson understood the right of conscience to be a pre-political one, *i.e.*, one that could not be surrendered to the government as a term of the social contract: "[O]ur rulers can have authority over such natural rights only as we have submitted to them. The rights of conscience we never submitted, we could not submit. We are answerable for them to our God." Thomas Jefferson, Notes on the State of Virginia, *in The Basic Writings of Thomas Jefferson*, 157–58 (Philip S. Foner ed., 1944).

In sum, "[t]he victory for freedom of thought recorded in our Bill of Rights recognizes that in the domain of conscience there is a moral power higher than the State." *Girouard v. United States*, 328 U.S. 61, 68 (1946). And it is the longstanding commitment to that principle which has animated the "happy tradition" in our country "of avoiding unnecessary clashes with the dictates of conscience." *Gillette v. United States*, 401 U.S. 437, 453 (1970).

Consistent with this history, the prohibition against coercing individuals into complicity with abortion has long been a strong societal and governmental interest. In *Roe v. Wade* itself, the Court quoted resolutions of the American Medical Association confirming that "no party to the [abortion] should be required to violate personally held moral principles." 410 U.S. 113, 143 n.38 (1973). And in *Doe v. Bolton*, the Court left intact a rule stating that "a physician or any other employee has the right to refrain, for moral or religious reasons, from participating in the abortion procedure." 410 U.S. 179, 197–98. The Court explained that this was "obviously in the statute in order to afford appropriate protection to the individual and to the denominational hospital." *Id*. at 198.

The conscience amendments were adopted in response to the Supreme Court's abortion decisions. The first conscience amendment, the Church Amendment, 42 U.S.C. § 300a-7 (c), was passed to protect physicians and hospitals from being forced to perform abortions. The Church Amendment provides that no entity that receives certain federal funding may discriminate against any physician or other health care personnel because he or she refused to assist in the performance of an abortion because of his or her "religious beliefs or moral convictions." 42 U.S.C. § 300a-7 (c).

When inserting the language in the Church Amendment specifically protecting individual conscience, Representative Heinz said the following:

> Mr. Chairman, freedom of conscience is one of the most sacred, inviolable rights that all men hold dear. With the Supreme Court decision legalizing abortion under certain circumstances, the House must now assure people who work in hospitals, clinics, and other such health institutions that they will never be forced to engage in any procedure that they regard as morally abhorrent.
>
> [In addition to protecting institutions from being forced to perform abortions,] we must also guarantee that no hospital will discharge, or suspend the staff privileges of, any person because he or she either cooperates or refuses to cooperate in the performance of a lawful abortion or sterilization because of moral convictions. . . .
>
> Congress must clearly state that it will not tolerate discrimination of any kind against health personnel because of their beliefs or actions with regard to abortions or sterilizations. I ask, therefore, that the House approve my amendment. . . .

7

Mark L. Rienzi, *The Constitutional Right Not to Participate in Abortions: Roe, Casey, and the Fourteenth Amendment Rights of Healthcare Providers*, 87 Notre Dame L. Rev. 1, 33 (2011) (quoting 119 Cong. Rec. 17,462-63 (1973)). Without further discussion, the House overwhelmingly passed the amendment and the bill by a vote of 372-1. *Id*.

> The Coats-Snow amendment provides:
>
> The Federal Government, and any State or local government that receives Federal financial assistance, may not subject any health care entity to discrimination on the basis that (1) the entity refuses to undergo training in the performance of induced abortions, to require or provide such training, to perform such abortions, or to *provide referrals for* such training *or such abortions*;

42 U.S.C. § 238n (a)(1) (emphasis added).

> The Weldon Amendment provides:
>
> (d)(1) None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, *or refer for abortions.*
> (2) In this subsection, the term "health care entity" includes an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan.

Consolidated Appropriations Act, Pub. L. No. 111-117, 123 Stat. 3034 (2009) (emphasis added).

The Final Rule's enforcement of federal statutory protections for conscience, whether that conscience be formed by religious or moral beliefs, or both, falls squarely within our country's historical practice of honoring the rights of conscience. The Final Rule does not violate the Establishment Clause.

### II. BECAUSE THE FINAL RULE DOES NOT GRANT RELIGIOUS BELIEFS PREFERENTIAL STATUS OVER NON-RELIGIOUS BELIEFS IT CANNOT VIOLATE THE ESTABLISHMENT CLAUSE.

Conscience protections, like the Free Exercise Clause itself, certainly can be limited to the protection of religious conscience. *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). But the present case

is even easier. Neither the Conscience Amendments nor the Final Rule single out religious beliefs for preferential treatment. Secular moral convictions against abortion are equally protected under the Final Rule and the amendments. Because religious beliefs are not singled out for preferential treatment, the Final Rule easily passes Establishment Clause muster. The Court has consistently turned aside Establishment Clause challenges when benefits to religious groups are similarly conferred upon secular entities or individuals. For example, in *Walz v. Tax Commission of the City of New York*, 397 U.S. 664, 673 (1970), the Court sustained a property tax exemption for religious properties in part because the State had "not singled out one particular church or religious group or even churches as such," but had exempted "a broad class of property owned by nonprofit, quasi-public corporations." *See also id*. at 696–97 (opinion of Harlan, J.) (The Establishment Clause neutrality principle is satisfied because the statute includes a broad array of associations promoting "the moral or mental improvement of men."). And in *Bowen v. Kendrick*, 487 U.S. 589, 608 (1988), the Court upheld against an Establishment Clause challenge a statute enlisting a "wide spectrum of organizations" in addressing adolescent sexuality because the law was "neutral with respect to the grantee's status as a sectarian or purely secular institution."

Accordingly, Plaintiffs' reliance on *Estate of Thornton v. Caldor, Inc*., is unavailing. See Joint Mem. Law at 39. *Caldor* involved a state law conferring a benefit on religious individuals or organizations alone. The Supreme Court invalidated a Connecticut statute that "impose[d] on employers and employees an absolute duty to conform their business practices to the particular religious practices of the employee by enforcing observance of the Sabbath the employee unilaterally designates." *Caldor, Inc.*, 472 U.S. at 709. The law violated the Establishment Clause because it singled out religious beliefs (Sabbath observers) for "special . . . protection without according similar

9

accommodation to ethical and religious beliefs and practices of other private employees." *Id*. at 711 (O'Connor, J., concurring).

*Caldor* is further inapposite because it imposed an unavoidable mandate on all businesses within the state. 472 U.S. at 709. Here by contrast, the Final Rule does no such thing. It merely imposes a condition on federal funds that Plaintiffs are free to decline if they wish to afford less protection to the conscience rights of their health care workers. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) (If state governments and private parties object to a condition on the receipt of federal funding, their "recourse is to decline the funds"). Plaintiffs' misplaced reliance on *Caldor* ignores the "basic difference between direct state interference with a protected activity" and government "encouragement of an alternative activity consonant with legislative policy." *Maher v. Roe*, 432 U.S. 464, 476 (1977). The government's power to use spending conditions to "encourage actions deemed to be in the public interest is necessarily far broader." *Id*.

As evident from the face of the Final Rule itself, as well as the federal conscience laws the Rule enforces, religious beliefs or practices are not afforded singular or unique protection. Religious beliefs and "moral convictions" are not equivalent. While religious beliefs can inform moral convictions, one can, quite obviously, have moral convictions without being a religious believer, or having any religious beliefs at all. In fact, one can have the moral conviction that subscribing to a religious belief is wrong.

Thus, with respect to abortion, one can believe that abortion is wrong (1) only as a religious matter, (2) only as a moral matter, or (3) both. Conflating religious beliefs with moral principles in order to claim the Final Rule violates the Establishment Clause is a specious argument that the Supreme Court has repeatedly rejected. *Harris v. McCrae*, 448 U.S. 297, 319 (1980) (stating that a regulation does not violate the Establishment Clause because it "happens to coincide or harmonize with the tenets

of some or all religions"); *McGowan v. Maryland*, 366 U.S. 420, 442 (1961) (same); *see also Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 209 (2d Cir. 2012) (same).

Indeed, if Plaintiffs were correct that allowing medical personnel and others to be exempt from participating in abortions, based either on religious or moral beliefs, violates the Establishment Clause, then many state laws that do just that are constitutionally suspect as well. Arizona, for example, provides that a physician or staff member who states in writing an objection to abortion "on moral or religious grounds is not required to facilitate or participate in the medical or surgical procedures that will result in the abortion." Ariz. Rev. Stat. § 36-2154 (B). Georgia law protects "any person" who states in writing an objection to participating in "any abortion or all abortions on moral or religious grounds." Ga. Code Ann. § 16-12-142 (a). Idaho provides that medical professionals should not be required to "participate in the performance or provision of any abortion" if they object on the basis of "personal, moral or religious reasons." Idaho Code § 18-612 (2016). Montana protects individual medical personnel from having to "advise concerning, perform, assist, or participate in abortion because of religious beliefs or moral convictions." Mont. Code Ann. § 50-20-111 (2). Indeed, the states are virtually unanimous in affording various levels of statutory protection to those who oppose participating in abortions.

These state laws, as well as the Final Rule, no more violate the Establishment Clause than the Federal Death Penalty Act, which mandates, with no exceptions delineated, that "[n]o employee . . . shall be required . . . to be in attendance at or to participate in any prosecution or execution under this

section if such participation is contrary to the moral or religious convictions of the employee." 18 U.S.C. § 3597 (b).

### III. ALLEGED BURDENS ON THIRD PARTIES DO NOT SUFFICE TO CREATE AN ESTABLISHMENT CLAUSE VIOLATION.

Building on their false claim that the Final Rule favors religious beliefs over secular beliefs, Plaintiffs advance the equally flawed argument that the Establishment Clause is violated whenever exemptions impose a burden on third parties. See Joint Mem. Law, at 39-40.

As a preliminary matter, Plaintiffs' burden argument falls apart in the light of the Founders' unqualified commitment to conscience rights. When granting conscientious objectors exemption from military conscription, the Founders did not consider relevant the burdens on the continental army. Thus, even when the country was in dire need of men to take up arms to fight for independence, our forefathers knew that conscience is inviolable and must be honored. They understood that to conscript men into military service against their religious conscience would have undermined the very cause of liberty to which they pledged their lives, fortunes, and sacred honor.

Plaintiffs' burden argument is further rebutted by the Supreme Court's seminal religious accommodations cases. In *Amos*, 483 U.S. at 339–40, the Court unanimously upheld against an Establishment Clause challenge Title VII's exemption allowing religious organizations to hire only members of their own religion. In doing so, the Court necessarily rejected *Amos*'s argument that the exemption imposed harm on him because it forced him to choose between "conforming to certain religious tenets or losing a job opportunity." *Id*. at 340 (Brennan, J., concurring).

In another unanimous decision, *Hosanna-Tabor Lutheran Church & School v. Equal Employment Opportunity Commission*, 565 U.S. 171 (2012), the Court rejected a religious discrimination claim by a teacher at a church-affiliated school, invoking the "ministerial exception," which derives from both the Free Exercise Clause and the Establishment Clause. *Id*. at 188–89.

Notwithstanding the burden on the teacher stemming from her loss of employment, and damage to her reputation, the Court held that the ministerial exception is not only permissible but required under the Establishment Clause. *Id.*

Plaintiffs' third party burden theory cannot be squared with either *Amos* or *Hosanna-Tabor*. Given the paramount importance of conscience rights throughout the Nation's history, any incidental burden on third parties is irrelevant.

## CONCLUSION

The Final Rule is consonant with our nation's historical practice of honoring the rights of conscience and is just as constitutional under the Establishment Clause as the federal conscience laws it enforces.

Respectfully submitted,

Dated: August 21, 2019                    By: /s/Jay Alan Sekulow
                                          Jay Alan Sekulow, Esq.
                                          *Counsel for Amicus Curiae,*
                                          The American Center for Law & Justice
                                          201 Maryland Avenue
                                          Washington. D.C. 20002
                                          Tel: 202-546-8890
                                          Fax: 202-546-9309
                                          sekulow@aclj.org